Steve Moss on behalf of Michael Garrett. Mr. Garrett is serving a 20-year sentence following his conviction for being a felon in possession of a gun, possessing with intent to distribute about 10 grams of marijuana, and possessing a firearm in connection and in furtherance of that drug trafficking offense. Due process guarantees the right to present a defense. That right includes the right to a theory of defense instruction that directs the court, the jury's attention to such evidence. In this manner, the court theory of defense instruction serves many purposes. First of all, it legitimizes the defense and it draws the jury's attention to that defense. Secondly, it has another function as well, and that applies in this case. It can prevent the defense theory of defense, which occurred in this case. In the closing rebuttal, the government suggested that Mr. Garrett's defense was that the gun was planted and that he was unaware of the marijuana in the bag, things which we never alleged and never argued. And you objected to the planting and it was sustained, right? The planting was sustained. Right. The lack of knowledge was not sustained. Both occur in rebuttal. With regard to the first... I'm sorry. The lack of marijuana, the baggies of marijuana, that was not sustained. In fact, we did rely upon simple possession. We admitted possession of marijuana. In fact, that played into all the other evidence of Mr. Garrett's intoxication, which we did request in a theory of defense instruction. Before addressing the details of this, I'd like to point out there is no dispute that these, that the theory of defense instruction was timely and it was an addendum of the law. So it differentiated between the offenses that, to which the defense applied and didn't apply? Yes. Yes, Your Honor. And those, all the submitted instructions are noted at addendum, in the addendum, pages four through eight. We initially submitted one prior to trial. We submitted some during trial. The court drafted their own. We requested all of those. Those were all timely and accurate statements. The only question really is, was there sufficient evidence to give this instruct, instruction? I do believe the standard of review is an important issue here. The government maintains it's an abuse of discretion. We maintain it is de novo pursuant to Gamboa, Scott, and Longcrow. Those last two cases are cited in my reply brief. Those cases are the only ones that specifically distinguish between an abuse of discretion. And also, they note that it applies to the question of whether the evidence was sufficient to justify giving the instructions. Now, I'll concede that there is some authority out there that says, well, abuse of discretion applies. But if you look at the authority cited in my opening brief and the reply brief, those authorities do distinguish different types of instructional error and they clearly support the fact that this court's review is de novo. We would suggest the abuse of discretion standard is really more akin to particularly worded instructions and things of that nature. So, the only issue being, was there evidence in support of that? That evidence is recounted at pages 16 and 17 of the opening brief and it includes physical evidence, video evidence, testimonial evidence, documentary evidence. I would suggest the most critical and the most obvious evidence of Mr. Garrett's intoxication and unconsciousness was the fact that either a joint or blunt burned through his jeans, into his inner thigh, and into the driver car seat. That is completely consistent with our claim that he was so sedated, he could not feel it. Now, that's one of the 10 the district court listed, right? The district court went down the 10 and ticked them off. That's correct. And that's one of the 10 she listed and she claimed it's speculation was her bottom line. Why is she wrong? She is wrong, Judge, because she's not taking into account that we do not need direct evidence to support the instruction. And the government suggests this, that we didn't show how much he took, when he took, things of that nature. And as noted in the reply brief, circumstantial evidence can be even more critical, more satisfying than direct evidence. There's absolutely no distinction between circumstantial and direct evidence in the determination of as a matter of direct and the indirect, the direct and circumstantial distinction, which you emphasize. I don't understand how it responds to Judge Judge Benton's question. Well, the judge said that it's speculation that all of those things were the result of Mr. Burns. I guess the burn wasn't speculation. Um, what you can infer from it. Um, I suppose arguably someone, the government could make the case that the burn occurred in some other manner when Mr Garrett was not intoxicated. But we don't have to show that. What are the offenses charged? Does that does that suggest the defense to both the possession with intent to distribute marijuana and the carrying the firearm in furtherance of of that offense counts two and three. I don't understand that. I mean, they're both specific intent offenses, Judge. And, uh, the evidence. But the fact that by the time he arrives in the parking lot, he's drunk. How is that a defense to to the the drugs in there and the gun in there and just what he what he what he was planning to do when he put the drugs in the gun there and just we don't we're not saying that he was drunk. We believe it was the narcotics. Okay, heavy duty narcotics. I don't care about what made him. Um, that that is evidence that we contend that evidence is relevant and would disprove. So take your gun and set out on the streets to sell more. That's the defense. Uh, Judge, the defense is whether or not the intent has been proven. And certainly the government could have argued that it didn't. But the fact is, we didn't. We didn't get the instruction. The jury wasn't given that option. You've got you've got you've got the ability to cross examine and argue it without without having without the complexity of trying to explain to the from the defense standpoint was a wonderful opportunity for for obfuscation. We had the argument with no defense that we could rest are that we gave us a foundation to argue that the same common sense you to use with the as you would have had with the instruction. Judge, I believe the case law requires it. If the evidence supports it, the burn is just one point. Every multiple witnesses, including government witnesses, described Mr Garrett as being intoxicated, as being dazed, as being confused. The videotape evidence shows him collapsing to the sidewalk after his exit from the car. The paddy wagon video is not just him drifting in and out of consciousness. You can see on that videotape as he's exiting in the process of scooting over, he falls into unconsciousness again. That is more than sufficient to satisfy the long crow standard that it must be weak. It may be weak, inconsistent or doubtful credibility. It may even be inconsistent with the defendant's own testimony. That's what Kenyon indicates. So certainly we believe that the instruction was amply supported by the evidence with regard to issue to the lab reports. There's no question those were suppressed by the government after trial. It was discovered by Mr Garrett that the drugs were not ecstasy. They were different substances. They were different purities. We contend all of those inconsistencies would have given him more of an ability to cross examine the other officers regarding the forward positive for drugs, right? As you know, the district court in this one says, Hey, that's bad for you. And if you break by keeping it away from you and we contend it's not because they admitted it to show intent knowledge. And we could argue, well, if it's in knowledge, he doesn't even know what it is. He's not aware of it. That shows ignorance. So we think that actually would have in some ways supported this theory defense. I also want to point out your test. What's your what's your argument requires us to to believe is that with those reports, defense counsel would have gleefully multiplied the length and emphasis of 404 B evidence. I don't think that in order to show that it wasn't the drug or it would have caused with it would have caused the witness to pay more attention to reports before he before he gave his answer. Well, and none of that comes close to suggesting prejudice to me. We're asking the court to view materiality collectively and at least collectively. What does collectively mean? It means you look at all of the evidence in the case. We're talking about 404 B evidence to which you objected to begin with. And in determining whether it's material we're suggesting you don't look at reports would have would have resulted in its being not admittance admissible. I'm saying the inconsistency between the lab reports and the other 404 B evidence would have given us more ammunition. So what other evidence? Now you're going. Now you're not. Now you're where I don't think the facts are, and I'm probably wrong. I thought that I thought the reference to ecstasy is what would have been impeaching. And I thought that came in the in the testimony, not in the documents. It did come in the testimony. Okay, so now we're now we're hypothesizing the government produces the lab reports and the witness being insufficiently perhaps uses the word ecstasy or uses a street term when he when the lab reports are more precise. And now he's now he's vigorously cross examined on that in order in order to establish that, in fact, it was it was a different drug. Remember, ecstasy isn't what what what Mr. Gabbard's on trial for that. So if it's caffeine or or cocaine or whatever other mixture it is that the street uses in the vernacular ecstasy, it doesn't really matter. How far down the road do you think any trial judge is going to let you do to try the underlying facts and circumstances of a 404 B question? I just wanted to I would have liked the opportunity to cross examine the officers. The officer that prejudice in order to prevail on this argument, right? And I believe in our brief suggests different levels of prejudice, and we think doing it collectively it is sufficient. I do briefly wait. They're all premised on additional cross exam of the 404 B witness, right? Yes. Yes, that is correct. With regard to the closing argument, I simply want to point out, as Judge Benton noted, there was a sustained of the argument that evidence was planted, but not that we claimed he was ignorant of the baggies of marijuana in closing, and this was not sustained. The government describes the 404 B evidence as defendant being in in drug trafficking, and he admitted to Officer Passanisi that he was a drug dealer. That was not supported by the evidence or the testimony. Moreover, the 404 B instruction the court gave told the jury you're gonna hear evidence. Defendants sold drugs in 2013. That was not supported by the testimony. So we believe this misstatement of the evidence combined with the court's misstatement, there was an objection, an immediate objection to the court's phrasing of the cautionary. Uh, we objected during closing argument. No, no, I'm telling you what I assume. I assume the cautionary was given when the 404 it was given before the testimony. There was an immediate objection to that phrasing. We did not. No, I don't believe we objected at that time because no one knew what the evidence was going to turn out that way. Maybe the government knew. I certainly did not know. But I did request in the instructions for that to be modified in the court overruled that the prejudicial nature of the possible prejudice from the judge's characterization was immediately apparent no matter what the 404 B evidence was gonna be. It wasn't apparent to me. The judge is characterizing evidence that hasn't been heard. I would think you would have been on your feet in an inside. I don't know if you tried the case, but I did try to be. But no, I did not make that objection at the time the testimony came out. I did subsequently make it. I do see I only have a minute left. I would like to reserve a little time. Thank you. Yes. Good morning, Your Honors. And may it please the court. My name is Jeff MacArthur, and I represent the United States. In this case, this case was transferred to me just before trial. I was trial counsel and I was lead counsel on all briefs. Um, I would like to start with issue one, which is in regards to the intoxication instruction, and it was not an abuse of discretion for Judge Ketchmark to refuse to give that instruction. You want to quickly address his cases that say it's, uh, de novo. His best cases are in reply brief. You want to address them? Okay. The cases that he has cited for de novo review don't specifically reference the intoxication instruction. What specifically does reference the intoxication instruction is this court's precedent in United States versus Phelps, 168 F. 3rd 1048, where this court definitively stated and analyzed that case under an abuse of discretion standard when that judge did not give an intoxication instruction. And that is why the standard review listed in the United States brief shows abuse of discretion as being the standard of review in this case. Now those precedents, United States versus Phelps, along with United States versus Kenyon, that's 481 F. 3rd 1054. Note that it is defendant's burden to get that instruction and must present evidence that would support a finding that defendant was in fact intoxicated, would show evidence that someone, showing evidence that someone is under the influence of drug is not enough to warrant that instruction. You must show that the defendant lacked the capacity to form the intent and Phelps specifically states that the intoxication instruction must not be given if premised on speculation. I agree with Judge Ketchmark in this case that there was far too much speculation to submit to a jury. For one, can anyone actually answer the question as to what Mr. Garrett was intoxicated on? Well, does it matter? Yes, it does. Why does it all matter? He was really something by all this, you know, she listed ten factors. Go ahead. Well, that's the danger that this court's precedent seeks to remedy, which is you don't want the jury just thinking, well, I don't know, could have been alcohol, could have been marijuana, could have been pills. Who knows? We don't know. What difference does it make when ultimately the question is one is of intent, right? And so, you know, that kind of cuts both ways. Your argument is that, well, you didn't need instruction because you could always argue intoxication because the jury was thoroughly instructed on intent. And now you're saying that, well, wait a minute, intent alone isn't enough. We have to know why they're intoxicated. And the reality of it is, is if you're going to commit a crime and the specific intent is required, it doesn't make any difference if you're impaired because you've been hit on the head, you've been taking an illegal drug, or your doctors prescribed you something. The law makes no distinction between why you can't form the intent, you know, you could be just incompetent or whatever. So now, can you explain your answer? Because I am confused. I agree with your statement, Your Honor. And that actually came to fruition in this case. The defense got to stand up in closing argument and make that exact argument. He claimed that Mr. Garrett was far too intoxicated to form the specific intent to carry out counts two and three of the indictment. That Mr. Garrett was so intoxicated he was falling over, and therefore there's no way he could have been in possession of a firearm in furtherance of a trafficking crime, or that there was no way that he meant to actually distribute drugs. This has to do with the intoxication instruction specifically, which should not be based on speculation. Here we have no evidence as to what drug, how much, the effects of it. The effects of the drug on the actual defendant is paramount in forming the lack of specific intent. Yes, sir. Well, the effects at the time that they're on, that they are on the scene, there's evidence of that. What I think you're really getting at is we don't know what the effects were at the time he developed or exercised the intent to distribute and carry a firearm to facilitate distribution, but that's what the jury's to sort out, right? Yes, and I agree with that. Does that really go into the propriety or necessity of giving the instruction? I mean, timing is critical. Even if he's high when the security guard can't wake him up for 45 minutes or after 45 minutes. I agree. That's not the moment when intent matters, but is that really relevant to the instruction issue? I think it's relevant to the instruction issue only because it's just another layer of speculation, and I agree with you. These crimes do not, they don't really work in the way that the intoxication instruction, I think, intends to remedy, which is possession with intent to distribute marijuana. As I explained in closing argument during this case, that crime involves getting marijuana, weighing marijuana, putting it in black bags. Have you found a case where that charge was defeated or on an intoxication defense, where intoxication was a successful defense to that charge? I've not found that case, Your Honor. Not even where it was discussed in a published opinion? Not from this circuit, although, well. You got one from the ninth that you don't want us to read. No, no, honestly, I'm hesitant to say there isn't one in all of federal jurisprudence, but I did not find one in this circuit, nor did I find any apparent one in any of my all-fed search that I did on this case. Did you find a case discussing where, particularly when there's multiple charges, some of which do not, the offense does not apply to, whether the, if it's an abuse of discretion standard, drawing the discretionary line between letting him argue it but not charge, not instructing it, letting the jury use its common sense to weigh the argument. So, it seems to me that if it's an abuse of discretion standard, that's a pretty significant line that the court has to draw and that we probably review deferentially, but that's why I'm asking. I've not found that case. However, the, you know, one of the remedies in this case was Judge Ketchmark did allow him to argue that in regards to count two and count three, he could argue that, hey, we don't know that this defendant's intoxicated, or that this defendant was intoxicated, so we don't know that he could have had the intent. And granted, in any case, a defense should be able to get up and argue that this defendant didn't have the intent to carry out this crime. And in this case, he was able to do it. This has specifically to do with, as defense counsel states, drawing the jury's attention to a specific instruction. And in this case, I think Judge Ketchmark was right on. There was far too much speculation to allow the jury to just guess as to how intoxicated, when he was intoxicated, how much drug that Mr. Garrett allegedly took. We don't know. And I would note that the person in the courtroom who could have cleared this entire thing up was Mr. Garrett himself. If he was intoxicated, if there was legitimate evidence of that intoxication, he could have taken the stand and I'd have had no argument if he explained that he didn't remember anything because he was overcome by the result of a drug. Now, granted, he would have been subject to some rigorous cross-examination, but he could have gotten that evidence. I don't think, correct me if I'm wrong, that you replied to the argument, and it's on the record here, where the district court says that the jury could see how he's looked at recesses, how he uses a cane, and his physical condition she's heard about is consistent with what the jury's seen in his struggles the last few days. Did you reply to that argument in any regard? I noticed the other side doesn't cite authority. Go ahead. I did not reply to that argument, no. Okay. Do you have any comment on it? The only comment I would make is, during the course of the trial, you see Mr. Garrett coming from where he's being held, when he's moving around the courtroom, he has a significant limp, he was using a cane, and I think what Judge Katchmark was touching on was this video that they're showing that Mr. Garrett, the jury, can clearly see a correlation between that and his inability to move around, which doesn't relate to the intoxication instruction, which I think was part and parcel as to why she turned it down. So it just went to the struggles part of her ten factors? Yes. It doesn't go to the officers saying dazed and confused and intoxicated, and the prescriptions, and it doesn't go to nine or ten of them, it goes to one of them? Right. Okay, go ahead. I would like to remark on issue two, which was a 404B issue. Six months prior to this trial in July of 2015, I filed a 404B notice which referenced an incident from December of 2013 involving Michael Garrett, in which DEA executed a search warrant at his house where they discovered a large quantity of marijuana, approximately 900 pills of what is colloquially known as ecstasy, plastic bags, a drug ledger, a firearm, a lot of drug paraphernalia that would indicate that the defendant is engaged in narcotics trafficking. As part of that case, the defendant made a statement to one of the DEA officers that he had recently purchased a large quantity of pills from an Asian guy. And so when defense counsel references that in closing argument, I stated that defendant admitted he was a drug dealer, that isn't what I said. I said when you take defendant's admission and all the other evidence, the defendant is a drug dealer. It's a reasonable inference which could have been drawn from the facts of not only the instant case, but the December 2013 incident. Now in regards to the lab reports regarding those 900 pills, when this case was transferred to me, part of the case file was an email that was sent from the prior AUSA to the defense counsel noting and attaching the lab reports and the investigative reports from that case. And so we fast forward six months later after that email was sent, after the notice is sent, and it's not until I have the DEA agent on the stand getting ready to testify that I find out for the first time that defendant says he had not received the lab reports in that case. And this is entirely briefed in defendant's motion for new trial. Now it was my understanding that based on that email he had received and the attachments that he had, he did have those. But apparently he did not. And of course Judge Ketchmark ruled in her order on defendant's motion for new trial that even if that evidence was somehow suppressed, it was not material without even getting to the issue of favorability. In fact, the standard for materiality is it's material only if there is a reasonable probability that disclosed the result of the trial would have been different. Now you all said tested the finally the pills were to the lab report showed the pills tested positive for drugs. What drugs did they, were they? So the lab report, yes, so the lab reports, there were three different results. In some sets of pills, the pills were methamphetamine and caffeine. In other sets of pills, the pills were cocaine, methamphetamine and caffeine. And in other sets of pills, the pills were methamphetamine and caffeine. And so, colloquially, as these things are dealt, as these things are investigated by DEA, these are sold and these are discussed as ecstasy. Some witnesses say that in this case or are you and me making it up? So I cite to authority in my brief, but the witnesses to the stand refer to all of this as ecstasy. So whether it's MDMA, Yaba, Speed, Molly, it's all colloquially investigated and sold as ecstasy. And so that's what the testimony that was given was about. Now I would, I suppose the defense notes that he could have had a more effective cross-examination, but again, I think as was pointed out, the cross-examination would have had to be, it would have had to go into the substance of what these drugs are and ultimately, how does that improve Mr. Garrett's case? I don't see how. There were drug ledgers found in his house, drug paraphernalia, other large quantities of marijuana found in his house, and ultimately this case was about the marijuana. The marijuana that was found in his house in December 13 was packaged in the very same way that it was found in the incident in December of 2014, which was a subject of the trial. That was the emphasis of the 404B evidence. In regards to the closing argument, I would note that it's worth pointing out that during objections, at no point was a mistrial requested, at no point in the defendant's motion for a new trial was any of the statements made in cross-examination brought up for a reason for new trial. Well packaged the same way, how was it unique? So, I mean was it something other than marijuana was packaged in baggies and stored in a ball brand glass mason jar in December 2014. In December 2013, the marijuana was stored the exact same way, and so that hits 404B right on the head when it goes to knowledge and intent in the instant case. Regarding the objections that were made during closing argument, I noted that there was a gun found on Mr. Garrett's coat that night. It was a cold night, the coat was directly next to him, and there was... That objection was sustained, right? That objection was sustained. Yeah. So, right, so that objection was sustained, but I think there was a reasonable inference, and I think you'll find with the other objections that there was indication in the record that would allow me to make those statements. And unless the the court has any more questions for me, I think I'll finish. Thank you. Thank you. Mr. Moss, have a rebuttal. With regard to the theory of defense issue, I'd like the court to imagine, just for a moment, that this appeal is a sufficiency challenge regarding Mr. Garrett's conviction for a DUI. If that's before the court, is this court going to look at this evidence and say, you know, the evidence is just insufficient. It's going to be insufficient. I would submit, absolutely, the court is not going to do that, and that, because of the beyond a reasonable doubt standard, that is a much higher standard than that of Longcrow, which only requires the evidence to be weak, inconsistent, or of doubtful credibility. Clearly, the evidence is more than that, and it was more than sufficient to justify the instruction. Regarding the standard of review, Phelps was decided after Scout and Longcrow. Those two cases are the only ones that distinguish when you apply de novo and when you apply abuse of discretion, and those are binding on this court. That makes the standard of review de novo. Phelps was decided before, you said after. I'm sorry, I may have misspoke. Phelps was decided after Scout and Longcrow. Mr. Garrett lacked the ability. So Phelps is controlling. No, it's the earlier case is the one that's controlling. Well, not if. Both Scout and Longcrow were decided prior to Phelps. Well, you're going with our mater. Mater. Yes. Yes. But only if they're, okay, the same defenses. Okay. Yeah. Depending on the scope of the precedent. Right. All right. I do see I'm out of time. Just in closing, I'd just like to say Mr. Garrett lacked the ability to remain conscious, to hear guards banging, to feel pain. And it's not a stretch to say he lacked the capacity to formulate the intent required of counts two and three. And for that reason, the instruction should have been given. Thank you. Thank you, Counsel. Case has been very well briefed and argued, and we'll take it under advice.